```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :    17cv2135 (DLC)
CELESTE SMITH,                           :
                  Plaintiff,             :    OPINION AND ORDER
                                         :
         -v-                             :
                                         :
CENTERLIGHT HEALTHCARE, INC.,            :
CENTERLIGHT HEALTH SYSTEM, INC., and     :
GLENN COUROUNIS,                         :
                  Defendants.            :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the plaintiff:
Celeste Smith, pro se
111 DeHaven Drive
Unit 119
Yonkers, New York 10703

For the defendants:
Diane Windholz
Damon W. Silver
Jackson Lewis P.C. (NY)
666 Third Avenue
29th Floor
New York, New York 10017

DENISE COTE, District Judge:

This is an employment discrimination and retaliation action by Celeste Smith against her former employers, Centerlight Healthcare System, Inc. ("CLHS"), her former supervisor at CLHS, Glenn Courounis, and a related company, Centerlight Healthcare, Inc. ("CLHC"). She has brought claims under Title VII of the Civil Rights Act, as codified at 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967

("ADEA"), and the Family and Medical Leave Act of 1993 ("FMLA"), as well as various state law causes of action. The defendants have moved for summary judgment, and plaintiff has failed to oppose the motion. For the following reasons, the motion is granted to the extent of dismissing the federal law claims. The Court declines to exercise supplemental jurisdiction over the state law claims.

## BACKGROUND

The following describes the evidence which is either undisputed or taken in the light most favorable to the plaintiff.[1] CLHS provides long-term healthcare services through its member company, CLHC. CLHC is a managed care provider that serves patients in New York City, Westchester, and Long Island. In July 2006, plaintiff Celeste Smith, a Black female, was hired as a Director of Human Resources for CLHS. In 2010 and 2012, Smith received promotions, to Corporate Human Resources Director, and Corporate Vice President of Human Resources, respectively. As Corporate Vice President of Human Resources, Smith received a salary of $190,000 per year and was eligible

---

[1] As described below, because the summary judgment motion is unopposed, "unresponded-to statements of undisputed facts proffered by the movant" may be deemed admitted. Jackson v. Federal Exp., 766 F.3d 189, 194 (2d Cir. 2014). Each such statement, however, must be "supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." Id. In describing the evidence here, each statement is supported by record evidence sufficient to meet defendants' burden of production on a motion for summary judgment.

for a bonus and other benefits.  Smith claims, however, that she did not receive a car allowance and did not begin receiving an 11% pension contribution until 2014, despite allegedly being eligible for those benefits upon her 2012 promotion.

In 2013, Smith claims that she was subjected to a "personality assessment" by an outside consultant for the fourth time, after previously taking the assessment three times over the course of her employment.  According to Smith, the questions on the assessment were demeaning and discriminatory, and she was the only female required to take it four times.

In 2013 and early 2014, Smith, as part of her role as Corporate Vice President of Human Resources, participated, along with her then-supervisor, in two internal investigations into the behavior of a CLHS executive.  Smith claims that after the subject of the investigation found out about her involvement, the executive "coached" her to leave CLHS.  Smith raised her concerns about the "coaching" to the then-president of CLHS, and he did not indicate that plaintiff's employment would be terminated.

Glenn Courounis began his tenure as CLHS's Senior Vice President of Human Resources on April 27, 2015.  At around the same time, the Centerlight companies began experiencing severe financial difficulties.  Courounis was brought in to restructure CLHS's human resources department.  Courounis was 59-years-old

3

at the time, 9 years older than his predecessor and 7 years older than plaintiff. At the start of Courounis's tenure, CLHS's human resources department employed 24 full-time employees, and Courounis decided that he needed to downsize the department. At a staff meeting shortly after he took the position, he announced this decision to the staff, so that they would be able to begin searching for other employment. The number of full-time employees was reduced from 24 to 18.5 by the beginning of 2016, and to 10.5 by July 2016. Of the remaining positions, four were filled by Black employees, four were filled by Hispanic employees, and 2.5, including Courounis, were White. Approximately 60% of the remaining staff was over 40 years of age, and 81% of the remaining staff were female. During Courounis's tenure, Courounis hired five new employees for lower-level positions: two of them Black, two White, and one Asian; four of the five were female, and two were over 47 years of age. He also terminated the employment of five employees, two of whom were Asian, two of whom were Black, and one was White (out of the two White employees in the department at the time); two were older than Smith and two were younger, and three of the five were male.

The layoffs were not limited to the human resources department. CLHS has laid off over 200 employees since January 2015, including 26 with the title of Vice President or above.

4

Of the laid off Vice Presidents, 21 were White, two were Black, two were Hispanic, and one was Asian. The laid-off individuals eventually included Courounis himself.

In October 2015, plaintiff made complaints to CLHS's Chief Compliance Officer and its Chief Administrative Officer that Courounis sent her information about a job opening in Virginia or Washington, D.C., and had hired employees for the human resources department that she believed did not have the appropriate qualifications. Later that month, Smith made a complaint to CLHS's then-president about Courounis alleging that he made inappropriate comments concerning various employees. Courounis, however, did not learn about either set of complaints until plaintiff's deposition in this action.

In December 2015, Smith had a conversation with Courounis in which they discussed certain medical problems that Smith was experiencing. The two of them came up with a plan under which Smith would be permitted to take intermittent leave. Smith also went on a vacation to the Caribbean in late December 2015 to early January 2016.

On January 13, 2016, Courounis, along with CLHS's then-Chief-Information-Officer, met with Smith to advise her that CLHS was eliminating her position. Courounis informed Smith that he had delayed terminating her employment until after January 1, 2016 so that she would be eligible for a new

5

severance plan that CLHS had implemented as of that date. Courounis had decided that CLHS's financial condition mandated her discharge well before her termination. After the discussion turned to Smith's job performance, Courounis told Smith that he had been dissatisfied with her handling of a particular matter, but after Smith disputed Courounis's view, Courounis looked into the matter and sent plaintiff a letter apologizing for his mistake. Courounis reiterated that Smith's job performance was not a factor in his decision to eliminate her position, and thus that his decision was unchanged. CLHS has not reinstated Smith's position to date.

## **PROCEDURAL BACKGROUND**

Smith filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 9, 2016. The EEOC issued a right-to-sue-letter on November 22, 2016. This civil action was filed, through counsel, in the Supreme Court of the State of New York, Bronx County, on February 15, 2017. On March 24, 2017, the action was removed to this Court. On August 25, 2017, an initial conference with counsel was held before this Court.

On December 6, 2017, counsel for plaintiff moved to withdraw, citing difficulties communicating with his client. After providing Smith with an opportunity to respond, and receiving none, counsel's motion was granted as of December 15.

Plaintiff has been proceeding pro se since that date. While pro se, plaintiff had significant difficulties in complying with the deadlines in this matter, particularly regarding the scheduling of her deposition. On March 16, 2018, defendants moved for summary judgment. Plaintiff had until April 6, 2018 to respond. With no response received, an April 12 Order sua sponte extended the deadline to April 18, 2018, but indicated that no further extensions would be granted. Plaintiff has still not responded to the defendants' summary judgment motion.

## **DISCUSSION**

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Gemmink v. Jay Peak, 807 F.3d 46, 48 (2d Cir. 2015). If the moving party makes this initial showing, the burden then shifts to the opposing party to establish a genuine dispute of material fact. El-Nahal v. Yassky, 835 F.3d 248, 252, 256 (2d Cir. 2016).

When a summary judgment motion is unopposed, a court may not grant summary judgment by default. Jackson v. Federal Exp.,

766 F.3d at 194. But, provided that the moving party has succeeded in making its initial showing, the failure to respond may be deemed an admission of that fact. Id.

**I. Claims for Employment Discrimination under Title VII and the ADEA**

Under Title VII and the ADEA, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the allegedly unlawful conduct. See 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(2) (ADEA). Smith's charge was filed on June 9, 2016. Therefore, Smith has timely stated a claim under these statutes only as to conduct occurring after August 14, 2015.

In employment discrimination cases, the Supreme Court has set out a burden-shifting framework at the summary judgment stage. Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff bears the burden of establishing a prima facie case of discrimination by showing (1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation. Doe v. Columbia Univ., 831 F.3d 45, 54 (2d Cir. 2016).

It is undisputed that plaintiff is a member of a protected class for her race, age, and gender discrimination claims, and that she was qualified for employment in her position. It is

also not in dispute that the discharge from her employment was an adverse employment action.  Smith fails to establish a <u>prima facie</u> case with respect to any of the claims related to her termination, however, because she has failed to come forward with even minimal evidence suggesting that CLHS acted with discriminatory motivation.

There is no direct evidence that Courounis was motivated by any prohibited characteristic in choosing to discharge Smith.  As for indirect evidence, that evidence shows that Courounis's layoffs actually increased the percentage of Black employees in the human resources department (from 33% to 40%), increased the percentage of women in the department (from 75% to 81%), and minimally decreased the percentage of the staff that was over 40 years of age (from 63% to around 60%).  As it is undisputed that Courounis was the sole decisionmaker responsible for eliminating Smith's position, there is not even minimal evidence to suggest that CLHS acted with discriminatory intent in eliminating Smith's position.  Accordingly, Smith's employment discrimination claims related to her discharge must be dismissed.

Smith's other employment discrimination claims are meritless and/or time-barred.  Smith's contentions regarding the car allowance are entirely speculative, and her claims regarding the pension contribution are inadequately supported and time-

barred. Smith's own deposition testimony relaying the hearsay statements of others is insufficient to create a triable issue of fact on whether CLHS denied her a pension contribution or car allowance because of her race or gender. Smith's claims regarding the personality assessments are time-barred as involving conduct which took place outside the 300-day statute of limitations. Accordingly, Smith's employment discrimination claims under Title VII and the ADEA must be dismissed.

**II. Claims for Interference and Retaliation under the FMLA**

Smith also contends that her rights under the FMLA were interfered with and that she was retaliated against for engaging in activity protected by the FMLA. To prevail on a claim of interference with FMLA rights, a plaintiff must establish:

> 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA.

Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir. 2016). To prevail on a claim of retaliation under the FMLA, a plaintiff must establish that "1) [s]he exercised rights protected under the FMLA; 2) that [s]he was qualified for [her] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004). Once the

plaintiff meets her burden on a prima facie case, the burden shifts to the employer to provide a legitimate reason for its actions; if the defendant does so, the burden again shifts to the plaintiff to show that the proffered explanation is pretextual.  See Graziadio, 817 F.3d at 430.

Smith's claims under the FMLA fail, at the very least, because no reasonable juror could find that Smith has proven that the defendants' reason for her termination was pretextual. By Smith's own testimony, she had a conversation with Courounis about certain medical problems she was experiencing, in which Courounis was sympathetic, and worked out a plan with her under which Courounis would permit her to take intermittent FMLA leave.  Even though there is some degree of temporal proximity between her conversation with Courounis about taking FMLA leave and her termination, the record is simply devoid of any evidence that her termination was otherwise connected to her exercise or attempted exercise of rights under the FMLA.  To the contrary, it is undisputed that Courounis was supportive of Smith's medical needs.  In addition, Courounis has submitted an unrebutted declaration that he had decided to eliminate Smith's position long before December 2015.

In light of the significant showing that defendants have made demonstrating that Smith's discharge was part of a cost-cutting measure affecting many officers and employees across the

11

company and in the human resources department specifically, no reasonable juror could find that plaintiff has rebutted that explanation and shown that the real reason for the termination was to prevent Smith from, or retaliate against Smith for, taking FMLA leave or otherwise exercising rights protected under the FMLA. Accordingly, Smith's claims under the FMLA must be dismissed.

**III. Claims for Retaliation Under the Title VII and the ADEA**

Smith's final set of federal claims is for retaliaton arising from her participation in the 2013-14 investigation of the senior executive, and her October 2015 internal complaints regarding Courounis. To establish a prima facie case for retaliation under Title VII and the ADEA, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001).

Smith's retaliation claims fail because her participation in the investigations and her internal complaints lack any causal nexus to her discharge, and the remaining aspects of the claims fail because Smith did not suffer an adverse employment action, they are time-barred, and/or they are purely speculative. Her participation in the investigations took place

12

well outside the 300-day statute of the limitations, and she was not terminated from her employment until January 2016, rendering any inference of retaliatory motivation impossible to find on this record. And it is undisputed that Courounis, the sole decisionmaker in her termination, did not learn about the internal complaints until plaintiff's deposition, which defeats the possibility of retaliatory motivation.

The remaining claims, such as for the denial of a car allowance and the pension contribution, are entirely unsupported outside plaintiff's own testimony. No inference can be drawn between her participation in the investigations and the denial of a car allowance, and the claims regarding the pension contribution are time-barred and entirely speculative. Accordingly, the federal retaliation claims must be dismissed.

**IV. State Law Claims**

Having dismissed all of the plaintiff's federal law claims, the Court declines to continue to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3); Pension Benefit Guar. Corp. ex rel. Saint Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 727 (2d Cir. 2013) (citation omitted) ("It is well to recall that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial

13

economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state law claims."). As this case was removed from the Supreme Court of the State of New York, Bronx County, the matter shall be remanded to that Court.

## **CONCLUSION**

The defendants' March 16, 2018 motion for summary judgment is granted to the extent of dismissing the federal claims from this action with prejudice. The Clerk of Court is directed to enter judgment for the defendants on the federal claims, and to remand the remaining claims in the action to the Supreme Court of the State of New York, Bronx County.

SO ORDERED:

Dated:   New York, New York
         June 21, 2018

```
            _____
                    DENISE COTE
            United States District Judge
```

Copy mailed to:

Celeste Smith
111 DeHaven Drive
Unit 119
Yonkers, New York 10703